<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **JEAN GERMAIN**, | |
| Plaintiff, | Civil Action No. 25-19006 (ZNQ) (TJB) |
| v. | **OPINION** |
| **HON. HAEKYOUNG SUH**, *et al.* | |
| Defendants. | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion for Temporary Restraining Order ("TRO") filed by *pro se* Plaintiff Jean Germain ("Plaintiff") against Defendants Honorable Haekyoung Suh, P.J. Ch. ("Judge Suh"), Montgomery Woods Homeowners Association, Inc. (the "Association"), Ansell Grimm & Aaron, P.C. ("Ansell Grimm"), Mezzacca & Kwasnik, LLC ("Mezzacca"), Piazza & Associates Inc. ("Piazza"), Premier Management Associates ("Premier Management"), and unidentified Insurance Carriers (collectively, "Defendants").  ("Mot.," ECF No. 3.)

The Court has carefully considered Plaintiff's submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will **DENY** Plaintiff's Motion.

1

I.    BACKGROUND AND PROCEDURAL HISTORY

A.    PROCEDURAL HISTORY

On December 24, 2025, Plaintiff filed his initial Complaint.  (ECF No. 1.)  On the same day, he filed a Motion for Temporary Restraining Order.  (ECF No. 3.)  On December 29, 2025, the Clerk's Office informed Plaintiff that his Complaint could not be processed because it was not accompanied by the filing fee or an application to proceed *in forma pauperis*.  (ECF No. 5.)  On January 5, 2026, Plaintiff paid the filing fee and his Complaint was filed.  The Clerk's Office also issued a summons the same day for Plaintiff to complete and serve on Defendants.  (ECF No. 7.)  As of this date, no Defendants have been served.  On April 14, 2026, however, Judge Suh executed a waiver of service, and her counsel entered a notice of appearance.  (ECF No. 9.)

On January 30, 2026, Plaintiff filed the First Amended Complaint ("FAC").  (ECF No. 8.)  On June 10, 2026, Judge Suh filed an application and proposed order for the Clerk to extend her time to answer the FAC (ECF No. 11), which the Clerk granted on June 11, 2026.  On June 26, 2026, Judge Suh requested a second extension to respond to the FAC (ECF No. 13), which the Court granted on June 30, 2026 (ECF No. 13).

B.    BACKGROUND

Although the FAC is not a model of clarity, it appears that the crux of the FAC involves a vast "conspiracy" concocted to deprive Plaintiff of his civil and legal rights.  As will be explained below, there does not appear to be any merit to Plaintiff's claims, and his request for a TRO will therefore be denied.  Nonetheless, in an attempt to articulate this alleged conspiracy, the Court will start from the beginning.

2

1.    The Property

Plaintiff is the owner and resident of property located in Princeton, New Jersey (the "Property").  (FAC ¶ 11 at 8.)[1]  The Property is in a community operated by the Association, and the Association is in turn insured by Greater New York Insurance Companies ("Greater New York").  (ECF No. 1-9.)

On or around April 18, 2022, the Property sustained water and mold damage as a result of rain that seeped through the unit's roof and siding.  (ECF No. 1-9 at 2.)  In September 2022, Greater New York was notified of the damage and conducted an inspection of the Property to assess whether the damage was covered by insurance.  (*Id.*)  Ultimately, Greater New York informed both the Association and Plaintiff that the damage was not covered by the applicable insurance policy.  (*Id.*; ECF No. 1-10.)

Nonetheless, it appears that the Association still offered to remediate the water damage and complete repairs on the Property.  (ECF No. 1-15 at 36.)  However, for reasons that are not stated, it appears that Plaintiff not only refused to cooperate with the Association or any of its contractors but took active steps to prevent the construction and remediation by installing cameras and sensors, and placing signs, traffic cones, and caution tape around the Property and nearby trees.  (*Id.* at 36–37.)

2.    State Court Litigation

In light of Plaintiff's refusal to allow the remediation work to begin, on March 18, 2024, the Association filed a lawsuit against Plaintiff in the Superior Court of New Jersey (the "State Court Litigation").  (ECF No. 1–15 at 37.)  The Association sought an order: (1) restricting Plaintiff's access to the Property so that the Association could remediate the mold issue and

---

[1] The FAC's paragraph numbers lose their sequential order at paragraph 56.  As a result, the Court identifies both the paragraph number and page number for clarity.

3

complete repairs; (2) declaring numerous violations of the Association's Bylaws; and (3) for civil restraints. (*Id.*)  Judge Suh was assigned to the case.

After nearly a year and half of litigation, Judge Suh scheduled a trial on December 16, 2025. (ECF No. 1-15 at 41.)  Despite notice of the trial date, Plaintiff failed to appear for trial. (*Id.* at 45.)  As a result, Judge Suh entered a final judgment against Plaintiff, in which she ordered him to provide the Association with access to the Property, to vacate the Property, and to reimburse the Association for the lodging costs that the Association incurred on behalf of Plaintiff from September 2024 to July 2025 due to Plaintiff's interference with and delay of the remediation work. (*Id.* at 45–46; ECF No. 1-16 at 1.)  The Sheriff's Office was also ordered to ensure Plaintiff vacated the Property.  During this period of removal, Judge Suh ordered the Association to pay for Plaintiff's lodging at a hotel of its choice for a period of no more than three (3) months. (*Id.*)

On December 22, 2025, Plaintiff filed an "Emergent Order to Show Cause" in the State Court Litigation, seeking to stay the final judgment entered by Judge Suh. (ECF No. 1-16 at 5.) Judge Suh denied Plaintiff's request the following day, holding that it was "procedurally improper and substantively unsubstantiated." (ECF No. 1-17 at 2.)  Undeterred and apparently dissatisfied with that result, Plaintiff filed the present Motion in this Court on December 24, 2025. (ECF No. 3.)

       3.     <u>The Alleged Conspiracy</u>

Turning to the alleged conspiracy, Plaintiff claims that the Association, Judge Suh, and various lawyers and contractors have conspired to deprive Plaintiff of his legal and civil rights. According to Plaintiff, this scheme involves a consistent and wide-ranging pattern of criminal conduct by Defendants, the contours of which will be outlined below.

*The Wire Fraud Scheme.*  Plaintiff's first allegation of criminal conduct relates to his lodging expenses while contractors attempted to remediate the damage to the Property.  Although

4

the FAC does not clearly set forth the relevant timeline or surrounding circumstances, it appears that, at some point before the State Court Litigation, Plaintiff vacated the Property to allow contractors to perform remediation work.  Plaintiff alleges that the Association agreed to pay both his hotel lodging and his Additional Living Expenses ("ALE") during this period.[2]  (FAC ¶ 22 at 15.)  In support of this alleged agreement, Plaintiff cites an email he received from Mezzacca, a law firm representing the Association, stating that the Association would "pay the next months fees" at a Marriott hotel.  (*Id.* ¶ 2, 22.)  Plaintiff alleges that he relied on this representation and incurred incidental expenses, including for meals and parking, only for the Association to renege on their promise to pay ALE.  (*Id.*)

Plaintiff further alleges that, because he was unable to pay the incidental charges he incurred, he was forced to vacate the hotel and return to the Property.  (*Id.*)  He contends that Defendants have since characterized these events as evidence that he obstructed the remediation process, whereas Plaintiff maintains that the Association's failure to honor its alleged commitment to pay his ALE forced him to leave the hotel.  (*Id.*)  According to the FAC, Plaintiff alleges that this sequence of events occurred on two occasions, in January 2024 and again in July 2025, and that they constitute wire fraud in violation of 18 U.S.C. § 1343.  (FAC ¶¶ 2–3 at 2–4.)

*Judge Suh's Involvement*.  Plaintiff also alleges that Judge Suh's actions in the State Court Litigation are criminal and were done in furtherance of the conspiracy against him.  Evidence of this alleged criminal conspiracy include Judge Suh's failure to recuse from the case, incorrect and mislabeled docket entries on the public docket, and adverse rulings against Plaintiff.  (*Id.* ¶¶ 25–27 at 19–21.)  Specifically, Plaintiff alleges that he filed a "531-page" emergency motion, and that on February 28, 2025, Judge Suh "weaponized" the mootness doctrine to deny it.  (*Id.* ¶ 29–30 at

---

[2] Although ALE is not defined by Plaintiff, the Court infers this to refer to incidental expenses such as food and parking.  The Court does not infer ALE to refer to lodging expenses.

21–23.)  Plaintiff further alleges that on a second occasion, Judge Suh again used the mootness doctrine to deny an emergency motion filed by Plaintiff.  (*Id.* ¶ 34 at 24.)  According to Plaintiff, these actions taken by Judge Suh constitute obstruction of justice in violation of 18 U.S.C. § 1503. (*Id.* ¶ 37 at 25–26.)

Plaintiff also claims that Judge Suh violated his due process right by, among other things, making incorrect legal decisions (*id.* ¶ 38–42 at 26–28), not providing Plaintiff with access to a remote hearing (*id.* ¶ 50 at 33–34), not ruling on his adjournment requests (*id.* ¶ 51 at 34), and operating a courtroom without audio recordings to manipulate the record (*id.* ¶ 53 at 37–39).

*Access to the Property.*  Plaintiff alleges that, in or around November 2024, Judge Suh entered an order authorizing Premier Management to access the Property.  (*Id.* ¶ 51 at 49.) Subsequently, representatives of Premier Management attempted to enter the Property without Plaintiff's consent or presence.  (*Id.*)  According to Plaintiff, when police responded to the scene, they construed the order to mean that Plaintiff's presence was required for the contractors to make lawful entry.  (*Id.* ¶ 52 at 49.)  The following day, Judge Suh entered an order authorizing entry to the Property "with or without [Plaintiff's] presence."  (*Id.* ¶ 54 at 49–50.)  Plaintiff characterizes the order as an improper *ex parte* order and contends that it constituted judicial obstruction of justice and violated his Fourth Amendment rights.  (*Id.* ¶ 56 at 50, ¶ 76 at 60.)  Plaintiff further alleges that, pursuant to Judge Suh's authorization, representatives made multiple unauthorized entries onto the Property between November 2024 and December 2025.  (*Id.* ¶ 57 at 51.)

## II.   LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure govern Temporary Restraining Orders and Preliminary Injunctions.  Pursuant to that Rule, a court may only issue a TRO without notice to the adverse party if: (1) "specific facts in an affidavit or a verified complaint clearly show that

6

immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65.

The factors for granting a TRO and preliminary injunction are the same.  *See Corp. Synergies Grp., LLC v. Andrews*, 775 F. A'ppx 54, 58 n.5 (3d Cir. 2019); *Jane v. Rodriguez*, Civ. No. 20-5922, 2020 WL 10140953, at *2 (D.N.J. May 22, 2020) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  Those factors are:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . .  [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).  The first two factors, likelihood of success and irreparable harm, are known as the "gateway factors" that the moving party must establish for the court to grant the injunctive relief.  *See id.* at 179; *SEC v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) ("Generally, the moving party must establish the first two factors and only if these gateway factors are established does the district court consider the remaining two factors.").  Once the gateway factors have been met, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  *Reilly*, 858 F.3d at 179.  "Because a preliminary injunction is an extraordinary and drastic remedy, the movant bears the burden of making a clear showing."  *Del. State Sportsmen's Ass'n, Inc. v. Del. Dept. of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (citation modified).

### III.   DISCUSSION

As alleged in the FAC, Plaintiff contends that Defendants violated numerous criminal and civil laws.  But as the Court will explain, his allegations reflect a fundamental misunderstanding of the applicable law and state court procedure.  Indeed, after reviewing the FAC and the exhibits attached to the Complaint, it is abundantly clear that Plaintiff has not established the likelihood of success on the merits or that he has suffered irreparable harm.  Accordingly, the existence of the two "gateway" factors—which are necessary for the issuance of preliminary injunctive relief— have not been satisfied and Plaintiff's request for injunctive relief must be denied.[3]

### A.  LIKELIHOOD OF SUCCESS

Plaintiff asserts four causes of action against Defendants: (1) violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d); (2) violations of 42 U.S.C. § 1983; (3) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and (4) common law fraud and deceit under New Jersey law.  As explained below, Plaintiff is unlikely to succeed on the merits of any of these claims.

#### 1.    RICO

RICO creates a private cause of action for "[a]ny person injured in his business or property by reason of a violation" of 18 U.S.C. § 1962 and allows a private party to sue in federal district court and recover treble damages, costs, and attorney's fees.  18 U.S.C. § 1964(c).  To be "injured in his business or property" simply means that a plaintiff's "business or property has been harmed or damaged." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025).  There are four specific prohibitions in § 1962 that are "aimed at different ways in which a pattern of racketeering activity

---

[3] Based on the allegations in the FAC, it also not clear that the Court has subject matter jurisdiction over this case.  As such, the Court will issue a separate Order to Show Cause as to why this case should not be dismissed for lack of jurisdiction.

may be used to infiltrate, control, or operate an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 330 (2016) (citation modified).

Relevant for this case, section 1962(c) "makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010) (citation modified). "Racketeering activity" includes numerous predicate offenses, including mail (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. § 1503), and witness tampering (18 U.S.C. § 1512), all of which Plaintiff invokes here.[4] (FAC ¶ 72 at 58.) However, the allegations in the FAC fall far short of stating a claim for relief based on any of these predicate offenses.

Starting with Plaintiff's mail and wire fraud allegations, he claims that Defendants violated these statutes by falsely representing that the Association would pay for his ALE. (FAC ¶ 22 at 14–15, ¶ 72 at 58.) Both statutes criminalize "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.SC. § 1343 (wire fraud); *id.* § 1341 (mail fraud). Broken up into its elements, "[t]he government must prove: (1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme." *United States v. Abrams*, 165 F.4th 784, 802

---

[4] Plaintiff also alleges that violations of 15 U.S.C. § 1692e are predicate offenses under RICO. However, the definition of "racketeering activity" does not include those offenses and therefore cannot be the basis of a RICO violation. *See Ukasik v. McWilliams*, Civ. No. 08-285, 2009 WL 3516441, at * 7 (W.D. Pa. Oct. 29, 2009) (dismissing RICO claim where the plaintiff's alleged predicate offenses were not included in § 1961's definition of "racketeering activity"); *Macauley v. Est. of Nicholas*, 7 F. Supp. 3d 468, 483 n.12 (E.D. Pa. 2014) (holding that any predicate offenses outside of those identified in § 1961 do not qualify as racketeering activity).

(3d Cir. 2026) (citation modified) (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012)).  The first element of the mail and wire fraud statues requires that the defendant "engaged in deception" and "had 'money or property' as 'an object' of his fraud."  *Kousisis v. United States*, 605 U.S. 114, 121 (2025).  As to the latter requirement, "[o]btaining the victim's money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's fraud." *Abrams*, 165 F.4th at 802 (alteration in original) (quoting *Kousisis*, 605 U.S. at 122).

As an initial matter, even assuming there was a scheme to defraud, it is not clear from the FAC what "money or property" Defendants sought to obtain from Plaintiff.  Nor is it clear how the Association's alleged promise to pay for ALE was made with the "aim" of obtaining "money or property" from Plaintiff.  Plaintiff cannot transform the Association's alleged failure to perform its contractual duties into a claim for fraud because there are no plausible allegations or evidence before the Court to suggest that these representations were made with the aim of obtaining Plaintiff's money or property.  *See Kelly v. United States*, 590 U.S. 391, 404 (2020) (reversing conviction for wire fraud where the defendants' actions were not done for the purpose of obtaining money or property).

Moreover, the evidence before the Court does not establish that Defendants engaged in a "scheme to defraud" Plaintiff.  Based on numerous exhibits attached to the Complaint, it appears that the Association only promised to, and ultimately did, pay for Plaintiff's lodging.  (ECF No. 1-5 at 2; ECF No. 1-12 at 22, 32.)  None of the exhibits attached to the Complaint state otherwise. Accordingly, it is unlikely that Defendants engaged in a scheme to defraud Plaintiff by falsely representing what costs the Association would pay for.  And even if they did, Plaintiff has not established that these representations were made with the aim of obtaining his money or property. Thus, Plaintiff is unlikely to succeed in establishing the predicate offenses of mail or wire fraud.

Plaintiff also alleged a violation of RICO based on obstruction of justice and witness tampering. (FAC ¶ 72 at 58.) These allegations fare no better. The obstruction of justice statute, 18 U.S.C. § 1503, states that anyone who "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" may be held criminally liable. 18 U.S.C. § 1503. The witness tampering statute, 18 U.S.C. § 1512, "prohibits witness tampering by murder and by threats or intimidation." *United States v. Tyler*, 956 F.3d 116, 123 (3d Cir. 2020).

As evidence of these alleged offenses, Plaintiff points to various orders issued by Judge Suh. (FAC ¶ 72 at 58.) But Judge Suh's judicial orders do not fall within the conduct that these statutes prohibit. They neither intimidate or threaten anyone or anything, nor do they obstruct the due administration of justice. Rather, these are judicial orders that carry with them the force of law. The fact that Plaintiff does not agree with the outcome of these orders does not make them criminal.

Plaintiff also alleges that a docket entry in the State Court Litigation had an inaccurate title for a motion that he filed. (*Id.* ¶ 26 at 19–20.) Plaintiff contends this mislabeling obscured his motion from the public and appellate courts and is unlawful. (*Id.*) But this allegation also falls far short of violating the obstruction of justice and witness tampering statutes. A docket entry that mislabels a motion does not obscure anything from anyone. The public and appellate courts, including this Court, can still obtain the document and review its contents, regardless of whether it was inadvertently misidentified on the court's docket. Such an error is inevitable in a system where docket clerks input docket entries across hundreds of cases in any given day. The fact that an error occurred, however, is clearly not criminal. Accordingly, Plaintiff is unlikely to establish

11

that Defendants engaged in "racketeering activity," and therefore Plaintiff has not clearly established that he is likely to succeed on his RICO claim.

### 2. 42 U.S.C. § 1983

Plaintiff's claim under 42 U.S.C. § 1983 also fails. For a defendant to be liable under § 1983, a plaintiff must establish (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). As to the first element, Plaintiff alleges that Defendants violated his right to due process and conducted an unreasonable seizure under the Fourth Amendment. (FAC ¶ 76 at 60.) But again, Plaintiff's allegations fall far short of establishing that Defendants violated his Constitutional or legal rights.

Regarding due process, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *Chey v. LaBruno*, 608 F. Supp. 3d 161, 175 (D.N.J. June 17, 2022) ("To plausibly state a procedural due process claim, [the plaintiff] must establish that: (1) she had a property interest protected under the Fourteenth Amendment; and (2) the procedures provided to her were constitutionally inadequate."). Even if Plaintiff could establish that he was deprived of a legitimate claim of interest, he is unlikely to establish that he was not afforded sufficient due process. For example, Plaintiff alleges that Judge Suh's final judgment was entered *ex parte* and without a trial. (FAC ¶ 76 at 60.) The final judgment, however, was only entered *after* Plaintiff failed to appear at trial. (ECF No. 1-14 at 1.) In other words, Plaintiff was provided with an opportunity to defend the claims asserted against him but affirmatively decided not to. By failing to appear at trial and defend the claims against him, he cannot now assert that he was deprived of

due process when a judgment is entered against him.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 814 F. App'x 678, 684 n.10 (3d Cir. 2020) (holding that due process was provided where the parties received "a meaningful opportunity to be heard" and to "present their case" before the judge); *Calipo v. Wetzel*, Civ. No. 19-50, 2022 WL 847136, at *9 (W.D. Pa. March 22, 2022) (rejecting due process claim where the plaintiff was convicted by a jury after failing to appear at trial).  Plaintiff has thus not clearly established that his due process rights were violated.

Plaintiff further alleges that Judge Suh's order allowing the Association to enter the Property "with or without" Plaintiff's presence violated the Fourth Amendment.  (FAC ¶ 76 at 60.)  This allegation plainly fails to state a plausible Fourth Amendment violation claim.  In the exercise of her judicial authority, Judge Suh was empowered to issue orders necessary to grant relief to the parties before her.  If Plaintiff believed that the order exceeded the scope of Judge Suh's authority or was otherwise erroneous, the appropriate remedy was to seek appellate review in the New Jersey courts.  An allegedly incorrect or overbroad judicial order, standing alone, does not establish a violation of the Fourth Amendment actionable under 42 U.S.C. § 1983.  Accordingly, Plaintiff is unlikely to succeed on the merits of his § 1983 claim against Defendants.

3.    FDCPA

Plaintiff also alleges that Defendants violated the FDCPA.  (FAC ¶ 79 at 61–62.)  "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).  As defined by the FDCPA, a "debt collector" means a person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Here, none of the Defendants are debt collectors within the meaning of the FDCPA because none of them are engaged in the business of the collection of any debts. Indeed, there are no allegations to suggest that Defendants regularly engage in consumer debt collection activity. Nor are there any allegations that Defendants have even attempted to collect any "debt" from Plaintiff. To the contrary, the only entity that appears to have attempted to collect money was a hotel that Plaintiff stayed at, but that hotel is not a defendant in this case. Thus, Plaintiff is unlikely to succeed on this claim either. *See King v. Verizon New Jersey Inc.*, Civ. No. 21-11226, 2024 WL 3964252, at *5 (D.N.J. Aug. 27, 2024) (dismissing FDCPA claim against the defendant where there were no allegations suggesting that the defendant's "most important aim" was to collect debt).

### 4.    Common Law Fraud and Deceit

Lastly, Plaintiff's claim for common law fraud and deceit is also unlikely to succeed on the merits. In New Jersey, "[t]he five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (citing *Jewish Ctr. Of Sussex Cnty. v. Whale*, 86 N.J. 619, 624–25 (1981)).[5]

Here, it is unlikely that Plaintiff will be able to establish that there was a "material misrepresentation of a presently existing or past fact." *Gennari*, 148 N.J. at 610. According to Plaintiff, Defendants falsely represented that they would pay his ALE while he stayed at a hotel. (FAC ¶ 82 at 62.) As evidence of this alleged misstatement, he points to a January 24, 2024 email

---

[5] Plaintiff is seeking compensatory damages for the alleged fraud and therefore is bringing a legal fraud claim, as opposed to an equitable fraud claim. As explained by the New Jersey Supreme Court, a claim for equitable fraud does not require a plaintiff to prove "[t]he elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom." *Jewish Ctr.*, 86 N.J. at 625.

from Mezzacca, which Plaintiff claims was a promise to pay his ALE. (*Id.* ¶ 2 at 2–3.) This email, however, only states that the Association would "pay the next months fees," without defining what "fees" are encompassed and whether they included ALE.

Moreover, other evidence before the Court suggests that the Association only offered to pay Plaintiff's lodging costs. For example, in a July 30, 2025 email, Mezzacca emailed Plaintiff and stated that the Association will pay for his lodging, but that it was not responsible for any of the other expenses Plaintiff incurred during his stay at the hotel. (ECF No. 1-5 at 2 at 2.) The Association's obligation to only pay for Plaintiff's lodging is further supported by Judge Suh's statement of reasons in her December 9, 2025 Order, in which she wrote that the Association would only pay for Plaintiff's lodging until the remediation work was completed at the Property. (ECF No. 1-12 at 21.) Similarly, in Judge Suh's final order dated December 16, 2025, she only ordered the Association to pay for Plaintiff's lodging at a hotel of the Association's choosing. (*Id.* at 32.) Both orders suggest that the Association was only obligated to pay for Plaintiff's lodging, not for his ALE. Plaintiff has not presented any evidence to the contrary. As such, at this preliminary stage it appears unlikely that Plaintiff will succeed on his common law fraud claim.

### B.    IRREPARABLE HARM

As for irreparable harm, Plaintiff argues that without injunctive relief he will be forced to vacate his home. (Moving Br. at 14.) But as the Third Circuit has explained, for there to be irreparable harm, "[t]he preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). Here, the issuance of a preliminary injunction is not the *only* way to protect Plaintiff from the harm he alleges. On the contrary, he can appeal any adverse decision to a higher court on the state level, and his harm is

therefore not irreparable.  *See Smith v. Laster*, 787 F. Supp. 2d 315, 318 (D. Del. 2011) (holding that plaintiffs could not show irreparable harm where their cause of action was based on an adverse state court decision that could be appealed to a higher court on the state level); *Smith v. Stark*, 777 F. Supp. 2d 795, 799 (D. Del. 2011) (same).

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiff has not clearly established the first two "gateway factors" necessary for the issuance of a TRO.  As such, the Court will **DENY** Defendant's Motion. *See Khanna v. Mayorkas*, Civ. No. 21-8712, 2021 WL 2621566, at *8 (D.N.J. June 25, 2021) (denying TRO because the plaintiffs did not establish the gateway factors).  An appropriate Order will follow.

Date: July 24, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**