**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JEAN GERMAIN**,<br><br>Plaintiff,<br><br>v.<br><br>**HON. HAEKYOUNG SUH**, ***et al.***<br><br>Defendants. | Civil Action No. 25-19006 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a second Motion for Temporary Restraining Order ("TRO") filed by *pro se* Plaintiff Jean Germain ("Plaintiff") against Defendant Montgomery Woods Homeowners Association, Inc. (the "Association"). ("TRO Mot.," ECF No. 25.) Plaintiff also filed a Motion for Leave to File a Supplemental Complaint. (Supp. Comp. Mot.," ECF No. 26.)

The Court has carefully considered Plaintiff's submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** Plaintiff's Motion for a Temporary Restraining Order and will **DENY** his Motion for Leave to File a Supplemental Complaint.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

On December 24, 2025, Plaintiff filed his initial Complaint. (ECF No. 1.) On the same day, he filed a Motion for Temporary Restraining Order. (ECF No. 3.) On December 29, 2025,

the Clerk's Office informed Plaintiff that his Complaint could not be processed because it was not accompanied by the filing fee or an application to proceed *in forma pauperis*. (ECF No. 5.) On January 5, 2026, Plaintiff paid the filing fee and his Complaint was filed. The Clerk's Office also issued a summons the same day for Plaintiff to complete and serve on Defendants. (ECF No. 7.)

On January 30, 2026, Plaintiff filed the First Amended Complaint ("FAC") but submitted it in an improper format that the Clerk's Office rejected. (ECF No. 8; Clerk's Office Message dated January 2, 2026.) The Court nonetheless considered the FAC. Defendant Judge Haekyoung Suh filed a waiver of service on April 14, 2026.[1] (ECF No. 9). She later filed a Motion to Dismiss that remains pending. (ECF No. 17)

The Court denied Plaintiff's first Motion for a Temporary Restraining Order in an Opinion and Order dated July 24, 2026. (ECF Nos. 18, 19.) At the same time, the Court Ordered Plaintiff to show cause why his complaint should not be dismissed for lack of subject matter jurisdiction. Plaintiff filed a response. (ECF No. 21.) That show cause also remains pending.

On what Plaintiff claims is the eve of a sheriff's sale of his home (sale scheduled to occur November 10, 2026), Plaintiff now files a second Motion for a Temporary Restraining Order to enjoin the sale based on a claim for a violation of the Fair Housing Act he proposes to assert for the first time in his Motion for Leave to File a Supplemental Complaint.

**B. BACKGROUND**

The Court begins with Plaintiff's prior pleading, the FAC, because it provides context and because Plaintiff expressly preserves its allegations in his motion seeking to supplement.[2]

---

[1] Although the Complaint names several other defendants — including the target of the present motion, Montgomery Woods Homeowners Association, Inc. — Plaintiff has filed no proof of service for any them. No defendants other than Judge Suh have waived service or appeared.

[2] The review of the FAC is taken largely from the Court's decision denying Plaintiff's first TRO motion.

Although the FAC is not a model of clarity, it appears that its crux is a vast "conspiracy" concocted to deprive Plaintiff of his civil and legal rights. As will be explained below, there does not appear to be any merit to Plaintiff's claims, and his request for a TRO will therefore be denied. Nonetheless, in an attempt to articulate this alleged conspiracy, the Court will start from the beginning.

1. The Property

Plaintiff is the owner and resident of property located in Princeton, New Jersey (the "Property"). (FAC ¶ 11 at 8.)[3] The Property is in a community operated by the Association, and the Association is in turn insured by Greater New York Insurance Companies ("Greater New York"). (ECF No. 1-9.)

On or around April 18, 2022, the Property sustained water and mold damage as a result of rain that seeped through the unit's roof and siding. (ECF No. 1-9 at 2.) In September 2022, Greater New York was notified of the damage and conducted an inspection of the Property to assess whether the damage was covered by insurance. (*Id.*) Ultimately, Greater New York informed both the Association and Plaintiff that the damage was not covered by the applicable insurance policy. (*Id.*; ECF No. 1-10.)

Nonetheless, it appears that the Association still offered to remediate the water damage and complete repairs on the Property. (ECF No. 1-15 at 36.) However, for reasons that are not stated, it appears that Plaintiff not only refused to cooperate with the Association or any of its contractors but took active steps to prevent the construction and remediation by installing cameras and sensors, and placing signs, traffic cones, and caution tape around the Property and nearby trees. (*Id.* at 36–37.)

[3] The FAC's paragraph numbers lose their sequential order at paragraph 56. As a result, the Court identifies both the paragraph number and page number for clarity.

2. State Court Litigation

In light of Plaintiff's refusal to allow the remediation work to begin, on March 18, 2024, the Association filed a lawsuit against Plaintiff in the Superior Court of New Jersey (the "State Court Litigation"). (ECF No. 1–15 at 37.) The Association sought an order: (1) restricting Plaintiff's access to the Property so that the Association could remediate the mold issue and complete repairs; (2) declaring numerous violations of the Association's Bylaws; and (3) for civil restraints. (*Id.*) Judge Suh was assigned to the case.

After nearly a year and half of litigation, Judge Suh scheduled a trial on December 16, 2025. (ECF No. 1-15 at 41.) Despite notice of the trial date, Plaintiff failed to appear for trial. (*Id.* at 45.) As a result, Judge Suh entered a final judgment against Plaintiff, in which she ordered him to provide the Association with access to the Property, to vacate the Property, and to reimburse the Association for the lodging costs that the Association incurred on behalf of Plaintiff from September 2024 to July 2025 due to Plaintiff's interference with and delay of the remediation work. (*Id.* at 45–46; ECF No. 1-16 at 1.) The Sheriff's Office was also ordered to ensure Plaintiff vacated the Property. During this period of removal, Judge Suh ordered the Association to pay for Plaintiff's lodging at a hotel of its choice for a period of no more than three (3) months. (*Id.*)

On December 22, 2025, Plaintiff filed an "Emergent Order to Show Cause" in the State Court Litigation, seeking to stay the final judgment entered by Judge Suh. (ECF No. 1-16 at 5.) Judge Suh denied Plaintiff's request the following day, holding that it was "procedurally improper and substantively unsubstantiated." (ECF No. 1-17 at 2.) Undeterred and apparently dissatisfied with that result, Plaintiff filed the present Motion in this Court on December 24, 2025. (ECF No. 3.)

3. The Alleged Conspiracy Against Plaintiff's Civil Rights

Turning to the alleged conspiracy, Plaintiff claims that the Association, Judge Suh, and various lawyers and contractors have conspired to deprive Plaintiff of his legal and civil rights. According to Plaintiff, this scheme involves a consistent and wide-ranging pattern of criminal conduct by Defendants, the contours of which will be outlined below.

*The Wire Fraud Scheme*. Plaintiff's first allegation of criminal conduct relates to his lodging expenses while contractors attempted to remediate the damage to the Property. Although the FAC does not clearly set forth the relevant timeline or surrounding circumstances, it appears that, at some point before the State Court Litigation, Plaintiff vacated the Property to allow contractors to perform remediation work. Plaintiff alleges that the Association agreed to pay both his hotel lodging and his Additional Living Expenses ("ALE") during this period.[4] (FAC ¶ 22 at 15.) In support of this alleged agreement, Plaintiff cites an email he received from Mezzacca, a law firm representing the Association, stating that the Association would "pay the next months fees" at a Marriott hotel. (*Id.* ¶ 2, 22.) Plaintiff alleges that he relied on this representation and incurred incidental expenses, including for meals and parking, only for the Association to renege on their promise to pay ALE. (*Id.*)

Plaintiff further alleges that, because he was unable to pay the incidental charges he incurred, he was forced to vacate the hotel and return to the Property. (*Id.*) He contends that Defendants have since characterized these events as evidence that he obstructed the remediation process, whereas Plaintiff maintains that the Association's failure to honor its alleged commitment to pay his ALE forced him to leave the hotel. (*Id.*) According to the FAC, Plaintiff alleges that

[4] Although ALE is not defined by Plaintiff, the Court infers this to refer to incidental expenses such as food and parking. The Court does not infer ALE to refer to lodging expenses.

this sequence of events occurred on two occasions, in January 2024 and again in July 2025, and that they constitute wire fraud in violation of 18 U.S.C. § 1343. (FAC ¶¶ 2–3 at 2–4.)

*Judge Suh's Involvement*. Plaintiff also alleges that Judge Suh's actions in the State Court Litigation are criminal and were done in furtherance of the conspiracy against him. Evidence of this alleged criminal conspiracy include Judge Suh's failure to recuse from the case, incorrect and mislabeled docket entries on the public docket, and adverse rulings against Plaintiff. (*Id.* ¶¶ 25–27 at 19–21.) Specifically, Plaintiff alleges that he filed a "531-page" emergency motion, and that on February 28, 2025, Judge Suh "weaponized" the mootness doctrine to deny it. (*Id.* ¶ 29–30 at 21–23.) Plaintiff further alleges that on a second occasion, Judge Suh again used the mootness doctrine to deny an emergency motion filed by Plaintiff. (*Id.* ¶ 34 at 24.) According to Plaintiff, these actions taken by Judge Suh constitute obstruction of justice in violation of 18 U.S.C. § 1503. (*Id.* ¶ 37 at 25–26.)

Plaintiff also claims that Judge Suh violated his due process right by, among other things, making incorrect legal decisions (*id.* ¶ 38–42 at 26–28), not providing Plaintiff with access to a remote hearing (*id.* ¶ 50 at 33–34), not ruling on his adjournment requests (*id.* ¶ 51 at 34), and operating a courtroom without audio recordings to manipulate the record (*id.* ¶ 53 at 37–39).

*Access to the Property*. Plaintiff alleges that, in or around November 2024, Judge Suh entered an order authorizing Premier Management to access the Property. (*Id.* ¶ 51 at 49.) Subsequently, representatives of Premier Management attempted to enter the Property without Plaintiff's consent or presence. (*Id.*) According to Plaintiff, when police responded to the scene, they construed the order to mean that Plaintiff's presence was required for the contractors to make lawful entry. (*Id.* ¶ 52 at 49.) The following day, Judge Suh entered an order authorizing entry to the Property "with or without [Plaintiff's] presence." (*Id.* ¶ 54 at 49–50.) Plaintiff characterizes

the order as an improper *ex parte* order and contends that it constituted judicial obstruction of justice and violated his Fourth Amendment rights. (*Id.* ¶ 56 at 50, ¶ 76 at 60.) Plaintiff further alleges that, pursuant to Judge Suh's authorization, representatives made multiple unauthorized entries onto the Property between November 2024 and December 2025. (*Id.* ¶ 57 at 51.)

4. <u>The Alleged FHA Retaliation</u>

Against this elaborate backdrop, Plaintiff seeks to add more. His concurrently filed Motion for Leave to File a Supplemental Complaint seeks leave to add a new claim and supporting allegations: Count V for "interference, coercion, and retaliation (42 U.S.C. § 3617; 24 C.F.R. § 100.400(c))" under the Fair Housing Act against the Association.

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure govern Temporary Restraining Orders and Preliminary Injunctions. Pursuant to that Rule, a court may only issue a TRO without notice to the adverse party if: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65.

The factors for granting a TRO and preliminary injunction are the same. *See Corp. Synergies Grp., LLC v. Andrews*, 775 F. A'ppx 54, 58 n.5 (3d Cir. 2019); *Jane v. Rodriguez*, Civ. No. 20-5922, 2020 WL 10140953, at *2 (D.N.J. May 22, 2020) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). Those factors are:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). The first two factors, likelihood of success and irreparable harm, are known as the "gateway factors" that the moving party must establish for the court to grant the injunctive relief. *See id.* at 179; *SEC v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) ("Generally, the moving party must establish the first two factors and only if these gateway factors are established does the district court consider the remaining two factors."). Once the gateway factors have been met, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179. "Because a preliminary injunction is an extraordinary and drastic remedy, the movant bears the burden of making a clear showing." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dept. of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (citation modified).

## III. DISCUSSION

Plaintiff's last-minute request for emergency relief suffers from a number of defects.

### A. EX PARTE RELIEF UNDER FED. R. CIV. P. 65

As a first matter, the Association, whom Plaintiff seeks to enjoin, appears to have never been served with a summons or Complaint.[5] Plaintiff filed this suit nearly a year ago in December 2025 and summons were issued shortly thereafter on January 5, 2026. In fact, the Court highlighted the lack of service of the summons and complaint in its denial of Plaintiff's first TRO motion. (ECF No. 19 at 2) ("As of this date, no Defendants have been served."). Plaintiff certified that he served the current moving papers on the Association. (ECF No. 25 at 25.) Insofar as Plaintiff is seeking relief against the Association without a realistic opportunity to be heard,

[5] The Association filed a letter at 2:38 p.m. on November 9, 2026 asking that Plaintiff's request for injunctive relief be denied and confirming that it had not yet been served with a summons or Complaint. (ECF No. 28.)

Plaintiff's application is *ex parte*. This is not fatal, but it implicates additional fail-safes. Notably, under Rule 65, a district court can only issue a temporary restraining order without written or oral notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Setting aside the requirements of paragraph (A), Plaintiff has made no showing as to paragraph (B) as part of his current motion. Today's sale is not a sudden emergency. Plaintiff admits that it has been scheduled and re-scheduled multiple times. (Supp. Compl. ¶ 98) ("The sale has been adjourned twice at Plaintiff's request.") Moreover, Plaintiff has been in contact with counsel for the Association as recently as yesterday. (*Id.*) ("On November 8, 2026, Plaintiff asked the Association's counsel for a further adjournment and for records.") In short, Plaintiff has not articulated any reason—beyond the emergency he appears to have himself created—why the Association should not be heard before granting his relief. Accordingly, this militates against granting Plaintiff's TRO application.

**B. LIKELIHOOD OF SUCCESS**

For the reasons set forth below, the Court further finds that Plaintiff also fails to make the requisite showing as to likelihood of success. Plaintiff's request for injunctive relief, as either a TRO or a preliminary injunction, must therefore be denied.

The FHA prohibits retaliation, making it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment or, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise of enjoyment of, any right granted or protected by [ ] 42 U.S.C. §§ 3603, 3604, 3605, or 3606." 42

U.S.C. § 3617. To state a claim for retaliation under the FHA, a plaintiff must plead that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *See Berk v. Ritz Carlton Condo. Ass'n*, Civ. No. 23-1877, 2024 WL 228414, at *22 (D.N.J. Jan. 22, 2024) (citations omitted).

By way of the first element of protected activity, Plaintiff alleges that he filed a HUD complaint against the Association in 2022, then appealed the decision by the New Jersey Department of Civil Rights on March 19, 2026. (Supp. Compl. ¶ 85.) He also alleges he filed reports to the U.S. Department of Justice in 2023, then again in January 2025, but he does not allege that the reports were directed against the Association. (*Id.* ¶ 86.) He also cites the filing of this suit in December 2025, although it remains unclear whether the Association has notice of it. (*Id.* ¶ 102.)

As to the second element of adverse action, Plaintiff alleges that the Association moved to "sell Plaintiff's home" on January 23, 2026, and again on April 8, 2026, after its first motion in state court was denied. (*Id.* ¶ 90.)

But with respect to the third, causal-link element, Plaintiff only vaguely cites the "timing and sequence" of his conduct and the Association's acts.

> 103. The Association's acts in paragraphs 90 through 98, taken together, would deter a reasonable homeowner from making or pursuing a fair-housing complaint, and they are causally connected to Plaintiff's protected activity, as shown by their timing and sequence.

(*Id.* ¶ 103.) Notably, Plaintiff fails to articulate how his apparently longstanding dispute with the Association, dating back to at least 2022, is what caused the Association to seek the sale of his home in 2026. With nothing more than the proffered timing and such a weak connection, the Court

finds that Plaintiff has not made the clear showing of likelihood of success on the merits that is required for preliminary injunctive relief.[6]

Insofar as likelihood of success is a gateway factor that has not been met, the Court does not reach the remaining factors required for a temporary restraining order and/or preliminary injunction.[7]

### C. STAY PENDING APPEAL

To the extent Plaintiff's Motion for Temporary Restraining Order separately seeks a stay of this decision pending appeal, that request will be **DENIED** for the same reasons set forth above. *See Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Heath & Hum. Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013) ("[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction.")

### D. PLAINTIFF'S MOTION TO FILE A SUPPLEMENTAL COMPLAINT

While the Court has considered Plaintiff's proposed Supplemental Complaint for the purposes of his application seeking injunctive relief, it finds that it would be premature to grant Plaintiff's Motion to File the Supplemental Complaint at this time given that the Association has not yet appeared. Accordingly, the Court will **DENY** that Motion without prejudice to Plaintiff's right to renew it at a later time after the Association has been served with a summons, the Complaint, and the Motion to File the Supplemental Complaint.

---

[6] As the FAC makes clear, Plaintiff and the Association had at least one other dispute: the extent to which he was entitled to living expenses while repairs to his home were made.

[7] Given the shortage of time the Court does not engage in a fulsome analysis of the irreparable harm element. It is notable however that Plaintiff's delay asserting his FHA claim and seeking injunctive relief against sale would appear to weigh against his showing of irreparable harm. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117–18 (3d Cir. 2013) (internal quotation marks, citation, and alteration omitted). "Delay in seeking enforcement of those rights tends to indicate at least a reduced need for such drastic, speedy action." *Id.* at 118 (internal quotation marks, citation, and alteration omitted).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request for a temporary restraining order and/or preliminary injunction in his Motion for Temporary Restraining (ECF No. 25) will be **DENIED**. His request for a stay pending appeal will also be **DENIED**. Finally, his request to file a Supplemental Complaint (ECF No. 26) will be **DENIED** without prejudice to his right to renew it at a later time as set forth above.

Date: November 10, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**